# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                                       **Case No. 09-CR-54**

**TRAVIS RADDLE**
        **Defendant.**

## SENTENCING MEMORANDUM

The government arrested defendant Travis Raddle and seven others pursuant to a sting operation in which an undercover ATF agent, posing as a drug dealer, arranged for the defendants to rob his "supplier" of 14 kilograms of cocaine. Defendant pleaded guilty to attempted obstruction of commerce by robbery, contrary to 18 U.S.C. § 1951, pursuant to an agreement with the government, and I ordered a pre-sentence report ("PSR") and set the case for sentencing.

In imposing sentence, I first calculated the advisory guideline range, then determined the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., Gall v. United States, 552 U.S. 38, 49-50 (2007); United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). This memorandum sets forth written reasons for the sentence imposed.

### I. GUIDELINES

The PSR set a base offense level of 20, U.S.S.G. § 2B3.1(a), then added enhancements of 5 levels because a firearm was possessed, § 2B3.1(b)(2)(C), and 1 level because the taking of a controlled substance was an object of the offense, § 2B3.1(b)(6). The PSR then deducted 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 23.

The report denied reductions under the attempt guideline, U.S.S.G. § 2X1.1, and the mitigating role guideline, U.S.G. § 3B1.2, prompting defendant to object.

**A.    Role Reduction**

Under U.S.S.G. § 3B1.2, the court may reduce the offense level by 4 if the defendant was a "minimal participant," by 2 if he was a "minor participant," and by 3 in cases falling in between. The guideline thus provides a range of adjustments for a defendant who plays a part in committing the offense that makes him "substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). The minimal participant adjustment covers defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. U.S.S.G. § 3B1.2 cmt. n.4. The minor participant reduction applies to a defendant who is less culpable than most other participants, but whose role could not be described as minimal. U.S.S.G. § 3B1.2 cmt. n.5. The defendant bears the burden of demonstrating, by a preponderance of the evidence, that he is entitled to a role reduction. See United States v. Haynes, 582 F.3d 686, 709 (7th Cir. 2009); United States v. Corral, 324 F.3d 866, 874 (7th Cir. 2003).

In the present case, defendant argued for a 2 level reduction, stating that he was not essential to the completion of the crime: he did not drive a vehicle to the scene, have detailed discussions with the co-defendants, and was not assigned ownership of any of the guns recovered by law enforcement. Although he was aware of some aspects of the scheme, he claimed that he was not briefed as to the specifics, as were some of the others. He concluded that his role was thus minor and unnecessary for the commission of the crime contemplated.

2

The government took no position on the issue.

I concluded that defendant had not demonstrated entitlement to the reduction. Specifically, he failed to show that he was substantially less culpable than the average participant. In fact, he appeared to <u>be</u> an average participant in this case. Eureka Hopson, who arranged the robbery with the undercover agent, was clearly the leader and planner of this crime, and it appeared that a co-defendant named Xavier Turner was the de facto leader of the others he assembled to participate, but defendant failed to show that he was less culpable than the other five co-defendants, all of whom occupied more or less equal roles.

It was true that defendant did not provide materials for the crime – cars or guns – but some of the others did not either. Defendant was present when the robbery was discussed at co-defendant Deshaun Baldwin's house and again at the meeting with the undercover agent, and officers found his fingerprints on one of the firearms seized. Some of the details to the crime had yet to be fleshed out (as indicated in the § 2X1.1 discussion below), so the other participants to whom defendant is comparable also had less than complete knowledge of how the crime would be completed. Finally, to the extent that this guideline permits a court to view the offense in a general sense, instead of based on the specific participants, defendant presented no argument or evidence that he was substantially less culpable than the average defendant in this type of case. Therefore, I could not conclude that defendant demonstrated entitlement to a reduction under § 3B1.2.[1]

**B.  Attempt Reduction**

Under U.S.S.G. § 2X1.1, the guideline in an attempt case is derived from the guideline

---

[1] I did, however, consider defendant's role in a broader sense under 18 U.S.C. § 3553(a).

3

for the substantive offense, with a 3 level reduction, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control. The government agreed that defendant qualified for the 3 level reduction in this case.

At the time the defendants were arrested, the plan and preparations for the robbery were far from complete. None of the defendants knew the specific identity of the planned victim. None knew where the robbery would occur. None knew any clear plan for how the robbery would occur. None knew their respective roles, or how the proceeds would be divided. I agreed that given these circumstances the reduction applied. I saw no basis for denying the reduction under § 2X1.1(c); U.S.S.G. § 2B3.1 is not listed in application note 1 as a guideline that expressly covers attempts.

With the 3 level attempt reduction, defendant's final offense level was 20. Coupled with his undisputed criminal history category of I, he faced a guideline range of 33 to 41 months imprisonment.

## II.  SECTION 3553(a)

**A.     Sentencing Factors**

Section 3553(a) directs a sentencing court to consider:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

4

> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of the defendant. 18 U.S.C. § 3553(a)(2). While the guideline range will generally be the starting point and initial benchmark in making this determination, Gall, 552 U.S. at 49, the district court may not presume that the guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009); Rita v. United States, 551 U.S. 338, 351 2465 (2007), or place "any thumb on the scale" favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. See Gall, 552 U.S. at 49-50.

5

**B. Analysis**

**1. The Offense**

The ATF obtained information that Eureka Hopson was in the business of robbing drug dealers of their drugs or money. An undercover agent, posing as a cocaine dealer from New York, made contact with Hopson and discussed robbing the agent's fictitious drug supplier. Hopson and the agent eventually agreed on a plan whereby they would rob 14 kilograms of cocaine from the supplier, which they would split. The robbery was to take place on January 28, 2009.

On that date, the agent and Hopson spoke, and Hopson indicated that instead of his usual partner he was bringing another partner who had three young males with him who liked to shoot. On the afternoon of January 28, the robbery participants (including this defendant) gathered at the residence of Deshaun Baldwin and his girlfriend. Some time later, Hopson called Xavier Turner, the apparent head of this assembled group, and discussed the robbery, including the possibility that they would rob the agent as well as his supplier. The group then left to meet Hopson, armed with two guns. They met Hopson, then drove to the Mitchell Domes, where they met the agent. The agent addressed the group and confirmed that they were ready. The agent then led the men to another location, where all eight were arrested. Agents seized a total of three guns, one of which had this defendant's prints on it.

**2. The Defendant**

Defendant was twenty-four years old, and although his prior record was limited, this was not his first brush with the law. In 2003, he was convicted of marijuana possession and placed on probation, but quickly revoked for using marijuana and ordered to served 45 days jail. In

6

2003 and 2005, he received ordinance violations for gambling. The PSR also discussed a juvenile consent decree entered after defendant struck a teacher.

Defendant was raised primarily by his mother and experienced difficulties in life, most significantly the murder of two siblings. I did find it hard to understand how someone with first hand knowledge of the consequences of gun violence could involve himself in the conduct at issue here. Defendant stated that he got involved because he was drinking and smoking marijuana, but I found that an unconvincing excuse.

Defendant enjoyed strong family support, which was in his favor. His girlfriend, the mother of his four month old child, also remained supportive. Defendant had another child, age five, from a previous relationship, and he seemed to care about his kids. At the time of sentencing he was in the process of working towards his GED and had been employed, off and on, by a construction company for over a year, factors also to his credit.

However, he still seemed to have some growing up to do. He continued to smoke marijuana while on bond in this case, which suggested that he might not be taking matters as seriously as he should. The probation office placed him in "Moral Reconation Therapy" after two positive drug tests, and his attendance and participation were marginal. He completed the program, but when asked what he learned said, "not smoke while on bond because you get in trouble." I suspected that was not really the lesson the counselors wanted to impart.

### 3. The Sentence

The government recommended a sentence within the guideline range of 33-41 months, while defendant requested a sentence of probation. I agreed with the government that a prison sentence was necessary to satisfy the purposes of sentencing in this case.

Although this was a sting operation, without an actual victim, this was nevertheless a

7

very serious crime. Individuals willing to engage in armed robberies of drug dealers, who themselves are likely to be armed, demonstrate significant disregard for life and safety. Therefore, prison was needed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

I also found prison necessary to protect the public and deter. As discussed above, it was not clear to me, based on defendant's performance on bond and in counseling, how seriously he took this. I also noted that he had been placed on probation in the past, been revoked and sent to jail, yet again violated the law. Prison was needed to impress upon him that he could not engage in this type of conduct, or any violations of the law, again. His correctional treatment needs included substance abuse counseling and completing his GED, but he could continue that through the Bureau of Prisons.

Defendant's suggestion of probation was insufficient. True, he had no criminal history points under the guidelines, but neither was this his first violation of the law. He had been on probation before (and been revoked). His performance on release in this case was uneven. His employment and work towards a GED were positive but ultimately insufficient to justify a sentence with no prison component. I also appreciated his concern for his children, but that too was insufficient to justify the sentence he sought. He was not the primary care-giver for either of his children, who both resided with their mothers. Finally, I could not accept that his involvement in this case stemmed from marijuana use or from his grief over the death of a sibling. As indicated above, the violent death of a loved one should make a person less likely to involve himself with guns or other violence. I was also somewhat baffled as to how defendant could continue to smoke marijuana after claiming that it caused him to make the poor choice to get involved with this crime.

8

I did find a prison term somewhat below the guideline range sufficient. First, defendant's role in this crime, if not technically mitigating under U.S.S.G. § 3B1.2, was limited. He did not plan the crime or provide materials for it. I accepted that he was a young man who made a very stupid decision, one that may be out of character.

Second, defendant had never been to prison before. Generally, a lesser term will suffice to deter someone who has never done time as opposed to someone who has yet continues to re-offend. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).

Under all the circumstances, I found a sentence of 24 months sufficient but not greater than necessary. This sentence provided sufficient punishment, deterrence and protection of the public, while acknowledging the mitigating aspects of the case and the positives in defendant's character and background. This sentence was based on § 3553(a) and would have been the same regardless of my finding on the disputed guideline issue. See United States v. Sanner, 565 F.3d 400, 406 (7th Cir. 2009). The sentence varied modestly from the range and was based on the particular facts of the case; it thus created no unwarranted disparity.

### III. CONCLUSION

I therefore committed defendant to the custody of the Bureau of Prisons for 24 months, followed by three years of supervised release with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this ____ day of January, 2010.

_____
LYNN ADELMAN
District Judge